Filed 4/14/15  P. v. Lasley CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DAYVEON JOHNTA LASLEY et al., <br><br> Defendants and Appellants. | D066967 <br><br><br> (Super. Ct. No. SWF1203308) |

APPEAL from a judgment of the Superior Court of Riverside County, Michael J. Rushton, Judge.  Affirmed in part, reversed in part, and remanded.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant Dayveon Johnta Lasley.

John E. Edwards, under appointment by the Court of Appeal, for Defendant and Appellant Nathaniel Tyrell Lakey, Jr.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Dayveon Johnta Lasley and Nathaniel Tyrell Lakey, Jr., of two counts of robbery (Pen. Code, § 211)[1] and one count of street terrorism (§ 186.22, subd. (a)). As to the robbery counts, the jury also found true allegations Lasley and Lakey committed the robberies for the benefit of, at the direction of, or in association with a criminal street gang (gang benefit enhancements) (§ 186.22, subd. (b)(1)(C)). The trial court sentenced Lasley to 13 years in prison and Lakey to 14 years in prison.

Lasley and Lakey both appeal, contending there was insufficient evidence to support the gang benefit enhancements. Lakey additionally contends the court erred by admitting an officer's hearsay testimony and by not imposing a one-third term sentence for the gang benefit enhancement related to the second robbery count. The People concede the latter error and we remand the matter for resentencing. We affirm the judgment in all other respects.

BACKGROUND

Lasley and Lakey entered a liquor store together. Lakey walked to the rear of the store while Lasley went to the register, pointed a gun at the cashier's face, and demanded money. When another employee heard the cashier ask not to be shot, the employee stood up. Lasley pointed the gun at the employee's face and then back at the cashier. At some point, Lakey moved next to Lasley and tried to get behind the front counter. The cashier

---

[1]    Further statutory references are also to the Penal Code unless otherwise stated.

took the money from the cash register and placed it on the counter. Lasley took the high denomination bills. Then, he and Lakey left the store.

Police officers responded to the store. One of the officers obtained a description of Lasley and Lakey and broadcast it to officers checking the surrounding area. Within a few minutes, officers contacted and detained Lasley and Lakey. The two store employees were transported to the location where Lasley and Lakey were detained. The cashier identified Lasley as one of robbers. The other store employee identified both Lasley and Lakey as the robbers.

Near where Lasley and Lakey were detained, officers found nineteen $20 bills, one $1 bill, and one $5 bill. They also found a pellet gun in the same location.

A gang expert opined the 65 Menlo Gangster Crips gang (Menlo Crips) was a criminal street gang and Lasley and Lakey were active members of it. Based on hypotheticals patterned after the facts of this case, the expert opined the charged crimes amounted to active gang participation, were committed in association with the Menlo Crips, and were committed to benefit the Menlo Crips. The expert explained a gang member will commit a crime with another gang member and not with a nongang member. The two gang members function as a team with assigned roles. The second gang member acts as a lookout to cover the back of the perpetrator and is trusted not to apprise law enforcement of the crime. The expert also opined the robberies benefited Menlo Crips because the proceeds would have been used by Lasley and Lakey to pay a tax to the gang, which the gang would use to finance its criminal activities.

3

The fact Lasley and Lakey were not wearing gang attire, did not mention their gang, and did not make gang hand signs during the robbery did not alter the expert's opinion. He explained gang members do not want to be tied to or have their gang tied to crimes not involving rival gang members. It is only when committing crimes against rival gang members that they want their identity and gang affiliation known because such crimes gain respect and rival gang member victims will not report the crimes to law enforcement.

DISCUSSION

I

*Hearsay Testimony*

A

At trial, one of the victims testified Lakey never tried to get behind the front counter. Over Lakey's hearsay objection, a police officer testified the victim previously told him Lakey tried to get behind the counter. The court overruled Lakey's objection, finding the victim's statement to the officer was a prior consistent statement.

Lakey contends the court erred in admitting the statement because it was not a prior consistent statement. The People concede the statement was not a prior consistent statement, but contend it was nonetheless admissible as a prior inconsistent statement. We agree.

4

B

"We review a trial court's rulings on the admission and exclusion of evidence for abuse of discretion." (*People v. Chism* (2014) 58 Cal.4th 1266, 1291.) We may affirm the ruling as long as it is correct on any ground. (*Id.* at p. 1295, fn. 12.)

Subject to the provisions in Evidence Code sections 1235 and 770, a statement by a witness inconsistent with the witness's trial testimony is admissible to establish the truth of the matter asserted. (*People v. Chism*, *supra*, 58 Cal.4th at p. 1294.) Evidence Code section 1235 provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with [Evidence Code] Section 770."

"Evidence Code section 770 provides for the admission of a prior inconsistent statement of a witness where '[t]he witness was so examined while testifying as to give him an opportunity to explain or deny the statement . . . .' " (*People v. Garcia* (1990) 224 Cal.App.3d 297, 303.) "[T]he 'realistic opportunity' which must be afforded the witness to explain or deny the statements under [Evidence Code] section 770 requires reference to *more than one* of the following, 1) the people involved in the conversation, 2) its time and place, or 3) the specific statements that were made during it." (*Id.* at p. 304.)

In this case, after the victim denied Lakey tried to go behind the counter, the prosecutor followed up with the victim:

"[PROSECUTOR:] Did you tell the officer that [Lakey] at some point tried to come behind the counter? [¶] . . . [¶]

"[VICTIM:] I don't—I don't remember. [¶] . . . [¶]

5

"[PROSECUTOR:] When the officer got there, did you tell him what happened?

"[VICTIM:] Correct, I did.

"[PROSECUTOR:] Did you tell him the truth about what happened?

"[VICTIM:] Correct, I did.

"[PROSECUTOR:] And were the events fresher in your mind that night than they are today?

"[VICTIM:] Correct.

"[PROSECUTOR:] Did [Lakey] try to come behind the counter?

"[VICTIM:] I don't—I don't remember."

This exchange satisfies each of the requirements for the requisite realistic opportunity to explain or deny the statement required by Evidence Code section 770. Accordingly, Lakey has failed to establish the trial court abused its discretion in admitting the statement.

II

*Gang Benefit Enhancements*

Lasley and Lakey both contend there was insufficient evident to support the gang benefit enhancements. "In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the

6

evidence."  (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)  "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict."  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

To establish the truth of a gang benefit enhancement allegation under section 186.22, subdivision (b)(1), the prosecutor must prove:  "first, that the defendant committed a felony (a) for the benefit of, (b) at the direction of, or (c) in association with a criminal street gang; and second, that in connection with the felony, the defendant harbored the *specific intent* to (a) promote, (b) further, or (c) assist in any criminal conduct by gang members."  (*In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1358; accord, *People v. Gardeley* (1996) 14 Cal.4th 605, 616-617; *People v. Williams* (2009) 170 Cal.App.4th 587, 625.)  The prosecution may meet its burden of proving a gang benefit enhancement allegation by presenting testimony from a gang expert.  (*People v. Gutierrez* (2009) 45 Cal.4th 789, 820; *People v. Hernandez* (2004) 33 Cal.4th 1040, 1047-1048; *People v. Gardeley*, *supra*, at pp. 617-620.)

Here, the evidence viewed most favorably to the judgment showed Lasley and Lakey entered the store together, Lakey went to the back of the store while Lasley confronted the victims.  During the confrontation, Lakey joined Lasley, stood by him, and tried to get behind the counter.  After Lasley took the money from the cash register, the two men left the store together.  Soon after the robbery, the two men were found together a short distance from the store.  The gang expert identified both men as active Menlo Crips members.  In addition, the expert testified gang members commit crimes

7

with one another, rather than with non-gang members, to facilitate the assignment of particular roles in carrying out the crime and to ensure the participants will cover for one another during the crime and will not cooperate with law enforcement after the crime.

The jury could have reasonably inferred from this evidence the men committed the robberies in association with the Menlo Crips gang.  (*In re Daniel C.*, *supra*, 195 Cal.App.4th at pp. 1358-1359 [evidence defendant committed a crime in the company of known gang members and affiliates is sufficient to establish defendant committed the crime in association with a criminal street gang].)  The jury also could have reasonably inferred from this evidence the men committed the robberies with the specific intent to promote, further or assist gang members in commission of the crime.  (*People v. Albillar*, *supra*, 51 Cal.4th at p. 68 ["[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members"].)  Accordingly, Lasley and Lakey have not established there was insufficient evidence to support the gang enhancements.

III

*Sentencing*

A

The trial court originally sentenced both Lasley and Lakey to 14 years in prison. Their sentences consisted of the middle term of three years for the first robbery count, plus 10 years for the gang benefit enhancement related to the first robbery count, plus one

year (one-third of the middle term) for the second robbery count and a concurrent 10 years for the gang benefit enhancement related to the second robbery count.

A few months later, the Department of Corrections and Rehabilitation notified the court Lasley's sentence was unauthorized under section 1170.1, subdivision (a), because the court imposed the full term instead of one-third of the full term for the gang benefit enhancement applicable to the second robbery count. In response, the trial court conducted a hearing to reconsider all of its sentencing choices and modified Lasley's sentence, ordering the entire term for the second robbery count to be served concurrently with the first term.

B

Lakey contends his sentence is similarly defective. The People concede and we agree with this contention.

Section 1170.1, subdivision (a), provides: "The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, *and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses.*" (Italics added.) This provision applies to a sentence for a gang benefit enhancement and, when imposed in a consecutive subordinate term, compels reduction of the sentence to one-third of the enhancement term. (§ 1170.11; *People v. Moody* (2002) 96 Cal.App.4th 987, 992.) As the trial court erroneously sentenced Lakey to the full term, rather than one-third of the full term, for

9

the gang benefit enhancement related to the second robbery count, we reverse the judgment as to Lakey's sentence and remand the matter for resentencing.

## DISPOSITION

As to Lakey's sentence, the judgment is reversed and the matter is remanded for resentencing consistent with this opinion.  The judgment is affirmed in all other respects.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

AARON, J.